J-S32001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF ROSALIND T. SNYDER, AN ALLEGED INCAPACITATED PERSON UNDER LIMITED GUARDIANSHIP OF C. BARBARA LEMUNYON | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ROSALIND T. SNYDER | : | No. 3138 EDA 2016 |

Appeal from the Order September 20, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 2014-0465

BEFORE: GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED JULY 21, 2017**

Appellant, Rosalind T. Snyder, appeals from the order entered in the Bucks County Court of Common Pleas, which reaffirmed Appellant's status as a partially incapacitated person and confirmed the position of Appellee, C. Barbara LeMunyon, as Appellant's limited guardian. For the following reasons, we affirm.

The trial court opinion sets forth the relevant facts and procedural history of this case. Therefore, we will only briefly summarize them. Appellant is an octogenarian who was living with her ex-husband, Reginald Snyder, and her son, Daniel Snyder. On December 22, 2014, the court adjudicated Appellant as a partially incapacitated person and appointed Appellee as limited guardian of Appellant's person and estate. Appellee's duties as limited guardian included oversight of Appellant's living conditions,

_____

*Former Justice specially assigned to the Superior Court.

finances, and medical needs.  On October 13, 2015, Appellee filed a petition for review, alleging Appellant's homeowner's insurance had lapsed because of the deteriorated condition of the home.  Appellee further stated that Appellant and her son were not cooperating with Appellee in allowing Appellee access to the home to perform her assigned duties and arrange for repairs.  Appellee requested plenary guardianship powers so she could better protect Appellant and her property.

On June 23, 2016, the trial court held an initial hearing on the petition for review, focusing on Appellant's lack of homeowner's insurance and the property's deteriorated state.  Appellant testified at this hearing, did not demonstrate an understanding of the importance of homeowner's insurance, and incorrectly stated she was presently covered by insurance.  Appellant also stated she recently burned her hand while reaching into her broken dishwasher.  After the hearing, the court authorized Appellee to spend up to $8,000.00 to repair Appellant's home in order to obtain homeowner's insurance, granted Appellee regular and periodic access to Appellant and her home without interference, and determined that an independent expert would review Appellant's cognitive status.

On August 11, 2016, the second part of the review hearing took place.  At this hearing, the court heard cognitive status testimony from Appellant's primary care physician, Dr. Bruce Lieberman, and the court-appointed psychiatric evaluator, Dr. Euhna Kim.  Dr. Lieberman stated he did not

notice any change in Appellant's mental status beyond that of normal aging and found no sign of dementia. In contrast, Dr. Kim testified that, after a forty-five minute evaluation of Appellant, he concluded Appellant suffers from a moderate level of progressive dementia and is in need of plenary guardianship. Appellee also testified at this hearing, regarding the repairs made to Appellant's home and the reinstated homeowner's insurance. Appellee further requested additional funding for more repairs, as well as a lockbox for easier access to Appellant's home.

On August 26, 2016, the court issued an adjudication and decree reasserting Appellant's status as a partially incapacitated person and confirming Appellee's position as limited guardian. The court also authorized the use of a lockbox, the expenditure of an additional $3,000.00 on repairs, the disposal or repair of Appellant's broken dishwasher, an evaluation of Appellant's driving abilities, and further oversight of Appellant's medications.

Appellant filed a *pro se* notice of appeal on September 20, 2016. On September 26, 2016, the court issued an order pursuant to Pa.R.A.P. 1925(b), directing Appellant to file her statement of errors complained of on appeal within 21 days and noting that any issues not included in her statement would be waived. Appellant's former court-appointed counsel personally hand-delivered a copy of the order to Appellant's son on October 7, 2016. Appellant failed to comply.

In her brief, Appellant raises ten issues for our review:

[WHETHER THE] SUPERIOR COURT FAILED TO ENTER JUDGMENT FOR…APPELLANT WHEN…APPELLEE DID NOT FILE A BRIEF IN OPPOSITION WITHIN THE REQUIRED TIME LIMIT[?]

[WHETHER THE ORPHANS' COURT] ERRED WHEN [IT] FAILED TO INVESTIGATE DAVID SNYDER'S CRIMINAL BACKGROUND[?] DAVID SNYDER IS…APPELLANT'S ESTRANGED SON AND THE PERSON WHO INITIATED THIS ACTION IN 2014 FOLLOWING THE HOUSE FIRE. DAVID IS NO LONGER PARTY TO THIS LAWSUIT WHICH NEVER SHOULD HAVE BEEN ALLOWED TO PROCEED IN THE FIRST PLACE.

[WHETHER THE ORPHANS' COURT] ERRED WHEN [IT] FAILED TO INVESTIGATE THE MAY 28, 2014 FIRE AT THE SNYDER HOME OR TO ORDER REPORTS FROM THE FIRE MARSHALL AND THE INSURANCE INVESTIGATOR TO BE MADE PART OF THE RECORD[?]

[WHETHER THE ORPHANS' COURT] FAILED TO ISSUE AN OPINION IN ACCORDANCE WITH THE RULES OF EVIDENCE[?] [THE ORPHANS' COURT] IMPROPERLY IGNORED EVIDENCE GIVEN BY [APPELLANT]'S PRIMARY CARE PHYSICIAN IN RENDERING [ITS] DECISION.

[WHETHER THE ORPHANS' COURT] RECEIVED A PAYMENT IN KIND FROM STATE REPRESENTATIVE KATHY WATSON IN THE FORM OF A CAMPAIGN MAILING ON HIS BEHALF[?] THIS VIOLATES THE SEPARATION OF POWERS.

[WHETHER] THE SUPERIOR COURT [ERRED BECAUSE IT] HAS NEVER READ DR. LIEBERMAN'S REPORT[?] [APPELLANT] HAS BEEN UNDER DR. LIEBERMAN'S CARE FOR MORE THAN 11 YEARS.

[WHETHER] IN TESTIFYING THAT [APPELLANT] HAS DEMENTIA, DR. KIM FAILED TO EXERCISE DUE DILIGENCE IN HIS EXAMINATION AND FINDINGS[?] HE FAILED TO PRESENT CLEAR AND CONCISE EVIDENCE OF DEMENTIA AND HIS TESTIMONY DOES NOT MEET THE REQUIRED STANDARD OF EVIDENCE.

[WHETHER] DR. KIM IMPROPERLY REFERRED TO DR.

MOYER'S DISCREDITED REPORT IN HIS TESTIMONY[?] [DR. KIM] FAILED TO CONDUCT AN INDEPENDENT EXAMINATION OF…APPELLANT. IN HIS TESTIMONY, DR. KIM FIRST CITES DR. MOYER'S REPORT WHICH STATES [APPELLANT] FAILED THE MATH TEST AND THEN CONTRADICTS THAT REPORT BY SAYING THAT [APPELLANT] PASSED THE MATH TEST.

[WHETHER]…APPELLEE, [C. BARBARA LEMUNYON], EXPRESSED AN INTEREST IN SELLING [APPELLANT]'S HOME WITHOUT PRESENTING EVIDENCE THAT [APPELLANT] IS UNABLE TO MAINTAIN THE HOME[?]

[WHETHER THE ORPHANS' COURT] ORDERED A TEST OF [APPELLANT]'S ABILITY TO DRIVE EVEN THOUGH THERE ARE NO TRAFFIC VIOLATIONS THAT WOULD INDICATE THAT [APPELLANT] IS UNFIT TO DRIVE[?] [A]PPELLANT'S ATTORNEY GAVE [THE ORPHANS' COURT] A COPY OF [APPELLANT]'S DRIVER'S LICENSE AND THE COURT [WAS] AWARE OF [APPELLANT]'S DRIVING RECORD.

(Appellant's Brief at 12-13).

As a prefatory matter, an appellant must timely comply whenever the trial court orders a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998). "[F]ailure to comply with the minimal requirements of Rule 1925(b) will result in **automatic waiver** of the issues raised." **Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa.Super. 2014) (*en banc*) (emphasis in original). "[O]ur Supreme Court does not countenance anything less than stringent application of waiver pursuant to Rule 1925(b)." **Id.** In civil cases, the Rule requires: (1) the trial court must issue a Rule 1925(b) order directing an appellant to file a response within twenty-one days of that order; (2) the

trial court must file the order with the prothonotary; (3) the prothonotary must enter the order on the docket; (4) the prothonotary must give written notice of the entry of the order to each party, pursuant to Pa.R.C.P. 236; and (5) the prothonotary must record Rule 236 notice on the docket. **See Forest Highlands Community Ass'n v. Hammer**, 879 A.2d 223, 227 (Pa.Super. 2005).

Instantly, Appellant filed her notice of appeal on September 20, 2016. On September 26, 2016, the court entered an order, with Rule 236 notice, directing Appellant to file a Rule 1925(b) concise statement of errors complained of on appeal within twenty-one days of entry of the order. Appellant was served with the order on October 7, 2016. Therefore, Appellant's statement was due on or before October 28, 2016, at the latest. Appellant did not comply.

The trial court issued its opinion on November 21, 2016, concluding Appellant had waived her issues for failure to file a court-ordered Rule 1925(b) statement, despite successful service upon Appellant "via her son and her former court-appointed counsel on October 7, 2016." (**See** Trial Court Opinion, dated November 21, 2016, at 6). Given that the trial court directed Appellant to file a Rule 1925(b) statement and strictly followed the proper filing and notice procedures, and given that Appellant failed to comply with the court's order, we agree with the court that Appellant waived her issues for appellate review.

Moreover, the court substantiated its decision on the merits to continue the limited guardianship. (**See id.** at 6-8) (finding expert testimony of court-appointed psychiatric evaluator, Dr. Kim, particularly compelling, due to Dr. Kim's expertise in geriatric psychiatry, greater time spent with Appellant focusing strictly on her cognitive status, and more in-depth testing conducted; totality of evidence adduced at trial established Appellant is at very least partially incapacitated and remains in need of limited guardian of both her person and estate; adjudication and decision under review continues to provide Appellant with certain degree of independence while addressing concerns about her finances and physical welfare). Accordingly, we affirm.[1] **See generally In re K.L.S.**, 594 Pa. 194, 197 n.3, 934 A.2d 1244, 1246 n.3 (2007) (stating where issues are waived on appeal, we should affirm rather than quash appeal).

Order affirmed.

---

[1] Due to our disposition, we deny Appellant's open motion for an addendum to her Brief, her open motion to introduce new evidence on a possible conflict of interest, and her open application for relief in the form of a motion to introduce new evidence.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2017

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In Re: ESTATE OF ROSALIND T. SNYDER, :  NO. 2014-0465
   a partially incapacitated person  :

## OPINION

Rosalind T. Snyder has filed a *pro se* appeal from the August 26, 2016 Adjudication and Decree issued by this Court which reaffirmed Rosalind T. Snyder's status as a partially incapacitated person in need of limited guardianship services, directed that Elder Care Advocacy Services, Inc., C. Barbara LeMunyon, President, remain as limited guardian of her person and estate, and both expanded and restricted some of the powers bestowed upon the limited guardian.

## BACKGROUND

Rosalind Snyder is an 80 year old individual who resides at 325 Bradford Avenue in Warrington Township, Pennsylvania, a property which she owns. Ms. Snyder has two adult children, Daniel Snyder and David Paul Snyder. Daniel Snyder, Ms. Snyder's 58 year-old adult son, and Reginald Snyder, Ms. Snyder's former husband, resided with Ms. Snyder in her home at the time of the hearing on the Petition for Review.

On December 22, 2014, Rosalind Snyder was adjudicated a partially incapacitated person and C. Barbara LeMunyon, President of Elder Care Advocacy Services, Inc., was appointed limited guardian of her person and her estate. The limited guardian's initial assigned duties included the payment of Ms. Snyder's bills, the oversight of her home, determining where she would reside, the protection of her assets, and the management of her medical and dental care.

On October 13, 2015, the limited guardian filed a Petition for Review. In this petition, the limited guardian alleged in part that the homeowner's insurance on the home located at 325

Bradford Avenue in Warrington Township, Pennsylvania, Ms. Snyder's chief asset, had lapsed. Ms. Snyder was allegedly not cooperating and not allowing the limited guardian access to the home for inspection and to arrange repairs. It was further alleged that Daniel Snyder was not cooperating with the limited guardian in allowing her to perform her assigned duties. The limited guardian also asserted that Ms. Snyder's abilities were diminishing, and asked for plenary guardianship powers so that she could better protect Ms. Snyder and the Warrington property.

On June 23, 2016, we held a review hearing.[1] On the first day of the hearing, testimony was elicited establishing that the homeowner's insurance on Ms. Snyder's Warrington home had lapsed, that her home was in a state of clutter and disrepair, and that the limited guardian was encountering difficulty in accessing Ms. Snyder and her home. Upon testifying, Ms. Snyder did not demonstrate an understanding of the significance and importance of maintaining homeowner's insurance, stated incorrectly that she was presently covered by such insurance, and stated that she had recently burned her hand while reaching into her broken dishwasher. However, Ms. Snyder did state that she continued to cook for members of her household and to drive a motor vehicle, and that she did not believe that she needed a guardian. Following the initial day of the review hearing, we issued an oral decree from the bench directing the following: (1) the limited guardian was authorized to spend up to $8,000.00 to have Ms. Snyder's property cleared and repaired so that homeowner's insurance could be obtained, (2) the limited guardian was to be granted regular and periodic access to Ms. Snyder and her home without interference, and (3) an independent expert would be appointed to perform an evaluation of Ms. Snyder's cognitive status.[2]

The second part of the review hearing for Ms. Snyder took place on August 11, 2016. At

---

[1] During the course of review proceedings, Ms. Snyder was represented by her court-appointed attorney, Lisa Gaier, Esquire.
[2] On July 5, 2016, we appointed Euhna Kim, M.D., a licensed psychiatrist, to conduct an independent evaluation of Ms. Snyder.

2

this phase of the review hearing we heard more detailed testimony regarding Ms. Snyder's cognitive status. Bruce Lieberman, M.D., Ms. Snyder's primary care physician, testified that during Ms. Snyder's recent visits to his office he did not notice any change in her mental status beyond that of normal aging, and found no evidence of dementia. N.T. 8/11/16, pp. 50-73. Daniel Snyder also testified that he believed his mother was improving in some respects and had no difficulty driving or keeping appointments, but did note that Ms. Snyder has some challenges using her microwave oven. N.T. 8/11/16, pp. 8-47. However, Euhna Kim, M.D., the Court-appointed evaluator who is a psychiatrist with an emphasis in geriatrics, testified that based upon his 45-minute meeting with Ms. Snyder and a review of her records he concluded that she suffers from a moderate level of progressive dementia, which renders her totally incapacitated and in need of plenary guardianship. N.T. 8/11/16, pp. 75-104. Dr. Kim particularly noted that Ms. Snyder was not aware as to why she was meeting with him, did not know if she had a guardian or power of attorney, did not know the name of her doctor, was not aware of more than one of her medical issues, and had very vague knowledge of her finances.[3] N.T. 8/11/16, pp. 81-83. The limited guardian, C. Barbara LeMunyon, also testified at the second part of the review hearing, and stated that since the first part of the review hearing: (1) repairs had been made to Ms. Snyder's home and homeowner's insurance had been reinstated effective August 3, 2016, (2) she had been granted limited access to the inside of Ms. Snyder's home, and noticed some dangerous conditions that required further repair and attention, and (3) it was her opinion that Ms. Snyder's home should be sold. N.T. 8/11/16, pp. 105-128. Ms. LeMunyon requested that she be granted plenary guardianship, and further stated that she needed more access to the home, perhaps facilitated by a lock box, and also needed to be permitted to expend the additional sum of $3,000.00 for further

---

[3] Dr. Kim also expressed concern about Ms. Snyder's ability to drive and about whether she was actually taking her prescribed pain medication.

repairs to the home. N.T. 8/11/16, pp. 122-125.

On August 26, 2016, based upon the record established throughout the two-part review hearing, this Court issued an Adjudication and Decree reasserting Ms. Snyder's status as a partially incapacitated person and confirming Ms. LeMunyon's position, in her capacity as President of Elder Care Advocacy Services, Inc., as the limited guardian of Ms. Snyder's person and estate. This Adjudication and Decree addressed some of the concerns raised by the limited guardian, by authorizing the limited guardian to: (1) have access to Ms. Snyder's home via a lockbox installed on the premises upon two hours' notice of an intended visit, (2) expend an additional $3,000.00 to pay for repairs for Ms. Snyder's home, (3) have the dishwasher at Ms. Snyder's home either repaired, replaced, or properly disposed of, (4) take reasonable steps to have Ms. Snyder tested with respect to her ability to drive safely and maintain a driver's license, and (5) oversee and manage Ms. Snyder's use of her prescribed pain medication. Further, addressing some of the concerns of Ms. Snyder and her son Daniel Snyder, the Adjudication and Decree also: (1) allowed Ms. Snyder to have as much contact as she desires with her son, Daniel, and to support him as her budget allows, so long as Daniel does not interfere with the assigned duties and powers of the limited guardian, and (2) amended the powers previously bestowed upon the limited guardian with respect to determining the residential placement of Ms. Snyder, giving Ms. Snyder the right to stay in her home as long as she wishes, so long as it is safe and economically feasible for her to do so and the home is insured.

Ms. Snyder filed a *pro se* Notice of Appeal to the Superior Court of Pennsylvania on September 20, 2016. Ms. Snyder failed to serve said notice upon the undersigned in violation of Pa. R.A.P. 906(a)(2).[4] On September 26, 2016, we issued an Order pursuant to Pa. R.A.P. 1925(b)

---

[4] We only became aware of Ms. Snyder's pending appeal after being informed by the Bucks County Clerk of Orphans' Court that she had filed a Notice of Appeal.

directing Ms. Snyder to file of record her statement of matters complained of on appeal and to serve the same upon the undersigned within 21 days. We noted in our Order that any matters not included in her statement of matters complained of on appeal shall be deemed waived. We further stated in our Order that Ms. Snyder was to immediately serve upon the undersigned a copy of the Notice of Appeal.

The copy of our Pa. R.A.P. 1925(b) Order that was sent to Ms. Snyder's address was returned and marked "not deliverable as addressed." Upon learning of this, Ms. Snyder's former court-appointed counsel, Lisa Gaier, Esquire, personally hand delivered a copy of said Order to Ms. Snyder's son, Daniel Snyder, on October 7, 2016.

## WAIVER

Calculating the time from when Ms. Snyder's son received the hand delivered copy of our Pa. R.A.P. 1925(b) Order, Ms. Snyder's 1925(b) statement was due on October 28, 2016. To date, we have not been served with a statement of matters complained of on appeal, nor does the docket reflect that one has been filed with the Clerk of Orphans' Court.

Under Pa. R.A.P. 1925(b)(4)(vii), "[i]ssues not included in the [1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa. R.A.P. 1925(b)(4)(vii). In order to find a waiver due to a failure to file a 1925(b) statement, the Court must comply with the following procedures: the Court must issue an Order directing Appellant to file a statement of matters complained of, the Order must be filed with the Clerk of Courts and listed on the docket, and written notice of the 1925(b) Order need be given to each party's attorney of record. *Forest Highlands Community Association v. Hammer*, 879 A.2d 223, 227 (Pa. Super. 2005).

As we previously stated, we issued and filed with the Clerk of Orphans' Court an Order

5

directing Ms. Snyder to file a statement of matters complained of on appeal on September 26, 2016. This Order is listed on the docket, and after an unsuccessful attempt at service by mail, the Order was successfully served upon Ms. Snyder via her son and her former court-appointed counsel on October 7, 2016. Despite this service, Ms. Snyder has yet to comply with our Order and submit her 1925(b) statement. For this reason, all issues should be deemed waived for purposes of appellate review.

## ANALYSIS

Despite our finding that Ms. Snyder has waived all issues for appeal, we nevertheless elect to briefly address this matter on the merits to provide the reasons for our decision. We believe that clear and convincing evidence was presented to support our determination that Ms. Snyder remains partially incapacitated and is still in need of a limited guardian of her person and estate.

In rendering our decision, we considered all testimony elicited at the review hearing. Daniel Snyder and Dr. Bruce Lieberman testified on Ms. Snyder's behalf at the second part of the review hearing. Daniel Snyder did not believe that Ms. Snyder needed a guardian, testifying that Ms. Snyder is still capable of driving, and that she has "minor difficulty [cooking], but [he doesn't] think [that's] strange [] for an elderly person." N.T. 8/11/16, pp. 10-12. However, we gave limited weight to the testimony of Daniel Snyder due to his general dependence upon his mother for life's necessities.

Dr. Lieberman testified via telephone concerning Ms. Snyder's medical condition. N.T. 8/11/16, pp. 50-51. Dr. Lieberman testified that he had no evidence to suggest that Ms. Snyder suffers from a cognitive deficit,[5] and had "no knowledge about her ability to manage her money,

---

[5] Dr. Kim expressed some doubt as to the administration and significance of the testing of Ms. Snyder performed by Dr. Lieberman. N.T. 8/11/16, pp. 86-87.

6

manage her checkbook and so forth." N.T. 8/11/16, pp. 70-71. As discussed in more detail below, we found Dr. Kim's testimony regarding Ms. Snyder to be of more weight due to his expertise in the field of geriatric psychiatrics, the greater time he spent with Ms. Snyder focusing strictly on her cognitive status, and the more in-depth testing he conducted.

We found the testimony of Dr. Kim, Ms. Snyder, and Ms. Snyder's limited guardian, Barbara LeMunyon, compelling in reaching our decision. While testifying at the first part of the review hearing, Ms. Snyder exhibited some general confusion, and specifically demonstrated a lack of understanding regarding the importance of maintaining homeowner's insurance. *See* N.T. 6/23/16. Barbara LeMunyon testified at the second part of the review hearing that she was very concerned about the condition of Ms. Snyder's home and its potentially hazardous conditions, and that she thought plenary guardianship was necessary, namely due to the difficulty she has encountered in conducting her duties as Ms. Snyder's guardian thus far. *See* N.T. 8/11/16, pp. 105-129.

Dr. Kim, an expert psychiatrist with an emphasis in geriatric medicine, testified that Ms. Snyder "has a significant amount of dementia which has gotten worse over the past few years." N.T. 8/11/16, pp. 78, 88. Dr. Kim stated that Ms. Snyder denied that she had a guardian, nor did she have any idea why they were doing the evaluation. N.T. 8/11/16, pp. 81-82. Further, she did not know the name of her family doctor, and did not know any details regarding her medical conditions and medications. N.T. 8/11/16, pp. 81-82. Based upon the tests conducted with Ms. Snyder and a review of her records, Dr. Kim concluded that Ms. Snyder is in need of a plenary guardian, and opined that, due to Ms. Snyder's cognitive deficiencies, she is totally unable to manage her financial resources and meet essential requirements for her physical health and safety. N.T. 8/11/16, pp. 96-97.

We believe that the totality of the evidence at trial, including Dr. Kim's expert testimony, clearly established that Ms. Snyder is at the very least partially incapacitated and remains in need of a limited guardian of both her person and estate. Further, we note that the special provisions contained in our August 26, 2016 Adjudication and Decree continue to provide Ms. Snyder with a certain degree of independence while addressing concerns regarding her finances and physical welfare.

## CONCLUSION

For the reasons heretofore stated, we suggest that Ms. Snyder's appeal is without merit.

BY THE COURT:

11/21/2016
Date

C. THEODORE FRITSCH, JR., ADMIN. J.

N.B.   It is your responsibility
to notify all interested parties
of the above action.

8